

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Game, Fish & Oyster Commission
Austin, Texas

Gentlemen:     Attention:  Mr. H. D. Dodgen,
                           Executive Secretary

                Opinion No. O-6935
                Re:  Whether Game, Fish & Oyster
                     Commission may expend monies
                     available from the Fish &
                     Oyster Fund to construct a
                     building to house a marine
                     laboratory and related matters

        Your request for opinion has been received and
carefully considered by this department.  We quote from
your request as follows:

        "The Game, Fish and Oyster Commission has
    under consideration the construction of a
    building to house a marine laboratory, such
    building to be constructed at some favorable
    locality on the Texas coast and to be used by
    the Game, Fish and Oyster Commission in con-
    ducting research on marine life problems for
    the purpose of accumulating information on
    which to base conservation efforts of the Com-
    mission.

        "In this connection we respectfully request
    your opinion on the following questions:

        "1.  Under the terms of the present ap-
    propriation law, may the Game, Fish and Oyster
    Commission use monies available from the Fish
    and Oyster Fund for the construction of a building
    to house the above mentioned laboratory facilities

where the estimated cost of such building is to be approximately $25,000.00?

"2. May the Game, Fish and Oyster Commission legally use monies available out of the Fish and Oyster Fund for the construction of a building to be shared jointly with the University of Texas to house a marine laboratory, to serve both this department and the University, when the estimated cost of such building is $50,000.00?

"3. May the Game, Fish and Oyster Commission legally use monies available from the Sand, Shell and Gravel Fund for the above mentioned purposes?"

Article 4030, Vernon's Annotated Texas Civil Statutes, reads as follows:

"All funds collected by the Game, Fish and Oyster Commission from the sale of commercial fishermans' licenses, fish dealers licenses, taxes on fish, crabs, oysters and shrimp, and all other taxed marine life, and fines and penalties collected for any infraction of any laws relating to commercial fishermen, shall be placed in the State Treasury to the credit of a fund to be known as 'Fish and Oyster Fund' and, together with the money now to the credit of this fund, is hereby appropriated and shall be used by the Game, Fish and Oyster Commissioner in the enforcement of the fish and oyster laws of this State, and in the dissemination of useful information pertaining to the economic value of fish and oyster marine life; the making of scientific investigations and surveys of the principal sea food fishes and marine life for purpose of the better protection and conservation of same, the propagation and distribution of sea food fishes, oysters, and other marine life; the purchase, repair and operation of boats and the employment of deputies to carry out and enforce the provisions of this Act. Acts 1925, 39th Leg. p. 446, ch. 178, ¶ 2." (Underscoring ours).

Article 4053d, Vernon's Annotated Texas Civil Statutes, reads as follows:

"The Game, Fish and Oyster Commissioner by and with the approval of the Governor, may sell the marl, gravel, sand, shell or mudshell included within this Act, upon such terms and conditions as he may deem proper, but for not less than four (4$) cents per ton, and payment thereeor shall be made to said Commissioner. The proceeds arising from such sale shall be transmitted to the State Treasurer and be credited to a special fund hereby created to be known as the sand, gravel and shell fund of the State, and may be expended by the said Commissioner in the enforcement of the provisions of the sand, shell and gravel laws and in the establishment and maintenance of fish hatcheries, when provided by legislative appropriation, and in the payment of refunds provided for in Section 7, Chapter 161, of the General Laws of the Regular Session of the Thirty-eighth Legislature, to counties, cities or towns or any political subdivision of a county, city or town, as provided for in Section 7, Chapter 161, of the General Laws of the Regular Session of the Thirty-eighth Legislature. And also providing that the authorization of refunds on sand, gravel and shell shall be extended to include refunds to the State Highway Commission of money paid the State through the Game, Fish and Oyster Commission for sand, gravel and shell used by the State Highway Commission on public roads upon application for such refunds in the manner prescribed for cities and counties. Provided further that not less than seventy-five per cent of the proceeds derived therefrom, after refunds above referred to have been cared for, shall go for the establishment and maintenance of fish hatcheries; and the sand, gravel, and shell fund is hereby appropriated for the purpose of carrying out the provisions of this Act. Said hatcheries to be established from time

Game, Fish & Oyster Commission - Page 4

> to time in the State of Texas by the Fish,
> Game and Oyster Commission, when in their
> judgment a suitable location is secured and
> arrangements therefor have been completed.
> Acts 1925, 39th Leg. ch. 183, p. 452 §1."

The current appropriation bill for the biennium ending August 31, 1947, after providing specific appropriations for the Game, Fish & Oyster Commission contains a rider attached thereto which reads in part as follows:

> "The foregoing specific amounts, or so
> much thereof as may be used, are hereby
> appropriated for the purposes above enumerated
> and shall be paid out of either the Special
> Game Fund, the Special Fish Propagation and
> Protection Fund, the Medina Lake Fund, the
> Fish and Oyster Fund, the Lake Worth-Eagle
> Mountain Lake Fund, or the Sand, Shell and
> Gravel Fund, and all money to the credit of
> these special funds on hand in the State
> Treasury on September 1, 1945, together with
> the current revenues to be derived and placed
> to the credit of these special funds during
> the next ensuing two years ending August 31,
> 1947, are hereby appropriated and may be used
> for the performance of the duties and functions
> of the Game, Fish and Oyster Commission in
> preserving, protecting and increasing the
> supply of wild birds, wild animals, fish and
> other edible aquatic animals of this State. . ."
> (Underscoring ours)

Opinion No. 0-5609 of this department addressed to you, construed a rider attached to the appropriation bill for your department almost identical with the rider above quoted, and held that the conducting of a shell fish hatchery for the production of oysters would come within the "preserving, protecting and increasing the supply of wild birds, wild animals, fish and other edible aquatic animals of this State" and that appropriations were available for that purpose. We enclose herewith a copy of said opinion for your information.

We answer your first question in the affirmative. In connection with your first question you have made the further

Game, Fish & Oyster Commission - Page 5

inquiry as to whether your commission would also have authority to purchase land upon which to construct the building inquired about and pay for same out of the Fish and Oyster Fund. We likewise answer said question in the affirmative and in support of such holding refer you to the case of Herring v. Houston National Bank, 269 S. W. 1031; also see Opinion No. O-6903 of this department, a copy of which is enclosed herewith for your information.

We answer your second question in the negative. We have been unable to find any statute authorizing the matter set out in your second question and no matter how desirable it might be for the University of Texas to share in the marine laboratory with your department, it is our opinion that specific authority for such arrangement would have to come from the Legislature of Texas before same would be lawful.

We answer your third question in the negative. See Article 4053d, supra.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By     Wm. J. Fanning
          Assistant

WJF:BT